[Civ. No. 11867.   First Dist., Div. Two.   Oct. 9, 1941.]

FLOYD G. RIESS, Respondent, v. JORDAN H. SANFORD, Appellant.

Glikbarg, Wolf & Selig and Samuel M. Roeder for Appellant.

Glickman & Glickman, A. W. Glickman and J. Clayton Orr for Respondent.

NOURSE, P. J.—The plaintiff had a judgment against defendant Sanford restraining him from manufacturing or selling cactus phonograph needles made of and from cactus spines of the species, type and character manufactured by the plaintiff. Damages for the unlawful manufacture and sale of such needles were awarded plaintiff against this defendant in the sum of $2792. Judgment also went against the co-defendant granting similar injunctive relief and damages in the sum of $1500. This defendant did not appeal and the judgment against it has become final. The defendant Sanford has appealed on a typewritten record.

The trial court found that the plaintiff had established a valuable business throughout the United States in the manufacture and sale of cactus phonograph needles under the trade name of "Kacti"; that in connection with said business he became the owner of certain trade or business secrets consisting of information as to the type of material used in the manufacture of said needles and the source of said material. The defendant, who knew nothing about the business, entered the employment of the plaintiff and during a period of three years in the course of his employment became acquainted with and familiar with all the secrets of his employer with the secret intention of gathering such information for the purpose of using it in future competition with plaintiff. During such employment he secretly entered into a contract with his co-defendant, a competitor of the plaintiff in the manufacture and sale of phonograph needles, under which he undertook to make use of these trade secrets to learn the species of cacti used in the manufacture of said needles and the source of supply where such spines could be obtained, and to use such information in the manufacture of such needles and their sale to his co-defendant. Before entering into this contract the defendant learned from his employer that his co-defendant had unsuccessfully endeavored to obtain from plaintiff the exclusive right of distribution and sale of the phonograph needles manufactured by the plaintiff.

The evidence fully supports the findings. The needles manufactured and sold by the plaintiff were made from a

species of cacti known as the Sahuaro which grows in a particular belt north of Tucson, Arizona, and is not found in any other part of the country. This is one of some eight hundred species of cacti and the only one suitable for this purpose. These facts having been made known to the defendant, he secretly visited the tract on two occasions during his employment for the purpose of learning the source of supply and the method of collecting and delivering the spines. While still employed by the plaintiff, this defendant secretly manufactured a large number of needles either from the supply which his employer had on hand or from material obtained by the defendant during his employment from the Arizona field. These he exhibited to his co-defendant in his negotiations for the contract above referred to, and the plaintiff testified that after the defendant had left his employment he discovered that the defendant had failed to deliver about 25% of the needles he should have received out of the raw material which the plaintiff had put in his possession.

In their briefs each party states four questions which represent his views as to the questions involved on the appeal, and both devote the greater part of their briefs to a discussion of the evidence. We disregard the points stated as well as the discussion of the evidence because whatever conflict there may be in the testimony of the witnesses the undisputed evidence amply supports the findings of the trial court, and that disposes of the question of the sufficiency of the evidence to support the findings.

The controlling point of law involved is the accepted doctrine that no agent or employee having been intrusted in the course of his employment with secret and valuable information known only to his employer may thereafter utilize this secret knowledge against the interests or to the prejudice of his employer. (14 Cal. Jur. 198, 199.) This principle is well stated in 28 Am. Jur. 304, as follows: "The disclosure by an employee of trade secrets and other confidential information obtained by him in the course of his employment is a breach of trust, and it is well settled that a court of equity will restrain any threatened disclosure or use thereof to the detriment of the employer. The character of the secrets, if peculiar and important to the business, is not material. They may be secrets of trade, secrets of title, secrets of process of manufacture, or any other secrets of the employer

important to his business." It is carried into the State Labor Code, section 2860 reading: "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment." The doctrine has been approved in this state in *Empire Steam Laundry* v. *Lozier,* 165 Cal. 95, 100, 102 [130 Pac. 1180, Ann. Cas. 1914C, 628, 44 L. R. A. (N. S.) 1159]; *Pasadena Ice Co.* v. *Reeder,* 206 Cal. 697, 702, 703 [275 Pac. 944, 276 Pac. 995]; *Gloria Ice Cream, etc., Co.* v. *Cowan,* 2 Cal. (2d) 460, 464 [41 Pac. (2d) 340]; *Langendorf United Bakeries* v. *Phillips,* 5 Cal. (2d) 150, 153 [53 Pac. (2d) 363]; *Hollywood Motion Picture Equipment Co.* v. *Furer,* 16 Cal. (2d) 184, 188 [105 Pac. (2d) 299]. In the latter case the court quoted with approval the statement in *DuPont de Nemours Pdr. Co.* v. *Masland,* 244 U. S. 100, 102 [37 Sup. Ct. 575, 61 L. Ed. 1016], that the "starting point" is not property or due process of law but the confidential relation between the parties and that "Whether the plaintiffs have any valuable secret or not, the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be. . . . The first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual incident of confidential relations. If there is any disadvantage in the fact that he knew the plaintiffs' secrets, he must take the burden with the good."

The judgment is affirmed.

Spence, J., and Dooling, J. *pro tem.,* concurred.