**GLOBESPAN, INC., Plaintiff,**

v.

**John O'NEILL, et al., Defendants.**

**No. CV 01–04350 LGB (CTx).**

United States District Court,
C.D. California.

July 12, 2001.

B. Scott Silverman, Morrison & Foerster, Los Angeles, CA, Mark J. Foley, Klett Rooney Lieber & Schorling, Philadelphia, PA, for Plaintiff.

Ulrico S. Rosales, David R. Burtt, Wilson Sonsini Goodrich & Rosati, Palo Alto, Anne Murray Patterson, Riker Danzig Scherer Hyland & Perretti, Morristown, NJ, for Defendants.

## ORDER GRANTING DEFENDANT BROADCOM'S MOTION TO DISMISS

BAIRD, District Judge.

## I. INTRODUCTION

Plaintiff, GlobeSpan, Inc., brings the instant suit against Defendants, John O'Neill and Broadcom Corporation ("Broadcom"), alleging misappropriation of trade secrets, unfair competition, and breach of the duty of loyalty. Defendant Broadcom brings a motion to dismiss.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On May 18, 1998, Defendant O'Neill began work as a Market Development Manager in Plaintiff's symmetric DSL ("SDSL") division, and was subsequently promoted to Product Line Manager. *See* Compl. at 2, ¶ 6.

On March 1, 2001, Defendant O'Neill allegedly informed Plaintiff that he was resigning from his employment effective March 14, 2001. *See id.* at 6, ¶¶ 14, 15. Plaintiff alleges that Defendant O'Neill had access to trade secrets and confidential information during his employment. *See id.* at 3, ¶ 9. Plaintiff further alleges that Defendant O'Neill has retained several binders containing trade secrets and confidential information since leaving his employment with Plaintiff. *See id.* at 7, ¶ 18.

On March 16, 2001, Defendant O'Neill allegedly began working as a Marketing Director for Defendant Broadcom, one of Plaintiff's direct competitors. *See id.* at 6–7, ¶¶ 16, 19, 21. Plaintiff alleges that "[i]n performing his duties against the backdrop of his extensive detailed knowledge of GlobeSpan's current products, future products and competitive strategies, O'Neill will inevitably rely upon GlobeSpan's proprietary information in making decisions and performing duties in each of these areas for Broadcom." *Id.* at 7–8, ¶ 22. Plaintiff also alleges that Defendant Broadcom will "unfairly benefit from decisions made by O'Neill using GlobeSpan information." *Id.* at 8, ¶ 23. Plaintiff further alleges that it will lose valuable trade secrets and confidential information unless Defendant O'Neill is restrained from working for Defendant Broadcom. *See id.* at 8, ¶ 22.

On March 29, 2001, Defendants O'Neill and Broadcom filed suit against Plaintiff in this Court seeking declaratory relief of non-misappropriation of trade secrets and alleging tortious interference with contractual relations and unfair competition. *See id.* at 8, ¶ 24, Ex. F. The case is currently pending before this Court.

On April 4, 2001, Plaintiff filed this action in the Superior Court of New Jersey. *See* Compl. at 1, Defendants removed this action to the United States District Court for the District of New Jersey on grounds of diversity of citizenship. *See* Def.'s Mot. at 4. On April 20, 2001, the case was transferred to this Court to be consolidated with Defendants' first filed suit. *See id.; see also* Burtt Decl. at 2, ¶ 2, Ex. A at 11.

Plaintiff alleges 1) misappropriation of trade secrets against Defendants O'Neill and Broadcom; 2) unfair competition against Defendants O'Neill and Broadcom; and 3) breach of the duty of loyalty against Defendant O'Neill. *See id.* at 8–10. Plaintiff seeks to enjoin Defendant O'Neill from entering into any contract with Defendant Broadcom which would allow him to work with DSL products or applications for a period of one year. *See id.* at 11.

Defendant Broadcom brings the instant motion to dismiss count one for misappropriation of trade secrets on the basis that Plaintiff relies solely on an allegation that Defendant O'Neill will "inevitably use" its trade secrets during his new employment. *See* Def.'s Mot at 4. Defendant Broadcom also seeks to dismiss count two on the grounds that the complaint alleges Defendant Broadcom is competing unfairly by employing Defendant O'Neill because he will "inevitably use" Plaintiff's trade secrets. *See id.*

## III. LEGAL STANDARD

### 1. Choice of Law

California law is applied unless the proponent of foreign law shows that the "government interests" analysis used in California dictates the application of the law of

a foreign state. *See Browne v. McDonnell Douglas Corp.*, 504 F.Supp. 514, 517 (N.D.Cal.1980) ("Under the government interest analysis, California will apply its own law unless it is shown that there is a compelling reason to displace forum law."); *see also Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1196 (9th Cir.1982) (outlining the three-step, "government interests" analysis).

The Ninth Circuit has established a three-step, "governmental interests" analysis for choosing the law to be applied in a case. First, the Court must determine whether the substantive laws of California and the foreign jurisdiction differ on the claims. *See Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1196 (9th Cir. 1982). Second, if the laws differ, the Court determines whether both jurisdictions have an interest in applying their own laws. *See id.* In determining the interests of a particular state in applying its laws, "the forum court undertakes an examination of the policies underlying the particular law and asks whether those policies will be served by applying that law in the action before the forum." *Hurtado v. Superior Court*, 11 Cal.3d 574, 581, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). Third, if both jurisdictions have an interest, the Court then takes a "comparative impairment" approach to determine which jurisdiction's interest would be more impaired if its policies were subordinated to those of the other jurisdiction. *See Liew*, 685 F.2d at 1196. The result is that the "conflict should be resolved by applying the law of the jurisdiction whose interest would be more impaired if its law were not applied." *Id.*

### 2. 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). A complaint fails to state a claim if it does not allege facts necessary to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984).

In reviewing a Rule 12(b)(6) motion, the court must presume the truth of the factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *see also Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). Dismissal under 12(b)(6) is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (dismissal appropriate only where "plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *see also Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir.1989). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the plaintiff's claim. *See Usher*, 828 F.2d at 561.

## IV. ANALYSIS

### A. Choice of Law

■ Plaintiff asserts that New Jersey law should be applied to the claims asserted in this case because the action was transferred to this Court from New Jersey. Plaintiff incorrectly maintains that the action was transferred because New Jersey was the improper venue for the action. However, this action was transferred to this Court pursuant to the "first-filed" rule and not upon grounds of im-

proper venue.[1] This rule "counsels the stay or dismissal of an action that is duplicative of a previously filed suit in another federal court." *Univ. of Penn. v. EEOC,* 493 U.S. 182, 187, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *see also Smith v. McIver,* 22 U.S. 532, 9 Wheat. 532, 6 L.Ed. 152 (1824) (establishing the "first-filed" rule, requiring that "[i]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it").

Plaintiff correctly argues that where a diversity case has been transferred for purposes of correcting the venue, the transferee court is obligated to apply the choice of law rules of the state from which the case was transferred. *See Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). However, when a transfer is based on other grounds, a federal court sitting in diversity shall apply the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, this Court must apply California's, rather than New Jersey's, choice-of-law rules to determine which state's laws will be applied to the claims asserted.

█ The analysis begins with the presumption that California law applies unless the proponent of foreign law, the Plaintiff in our case, shows otherwise. *See Browne v. McDonnell Douglas Corp.,* 504 F.Supp. 514, 517 (N.D.Cal.1980) ("Under the government interest analysis, California will apply its own law unless it is shown that there is a compelling reason to displace forum law.").

Under the Ninth Circuit's "governmental interests" analysis, this Court must first determine whether the substantive laws of California and New Jersey differ on the claims. See *Liew,* 685 F.2d at 1196. California has codified the protection of trade secrets in its version of the Uniform Trade Secrets Act. *See* Cal. Civ.Code § 3426, *et seq.* Furthermore, California has codified an additional law that may be applicable to this case. Business & Professions Code § 16600 provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof.Code § 16600.

New Jersey common law establishes an obligation on the part of the employee not to use or disclose trade secrets or confidential information to the detriment of the employer. *See Sun Dial Corp. v. Rideout,* 29 N.J.Super. 361, 365, 102 A.2d 90 (1954). However, New Jersey does not have comparable statutory or common law to California Business and Professions Code § 16600 ("Section 16600"). Therefore, a conflict exists between the laws of the two states.

Second, this Court must determine whether both jurisdictions have an interest in applying their own laws. *See id.* In determining the interests of a particular state in applying its laws, "the forum court undertakes an examination of the policies underlying the particular law and asks whether those policies will be served by applying that law in the action before the forum." *Hurtado,* 11 Cal.3d at 581, 114 Cal.Rptr. 106, 522 P.2d 666.

---

1. The Transcript from the District Court of New Jersey reveals that the case was transferred to this Court specifically because "it belongs [] in the first filed jurisdiction, which is the Central District of California. *I don't have to consider the 1404, 1406 transfer motion* alternatively raised by the defendant here because I really think that under the first filed rule, I don't have to wait for an injunction from the Central District of California as to this case." Hearing Transcript from District Court of New Jersey in Burtt Decl., Ex. A at 11 (emphasis added).

New Jersey has an interest in applying its own trade secrets common law to protect Plaintiff, a New Jersey citizen, from having its trade secrets stolen. California has an interest in applying Section 16600 to protect Defendant O'Neill, a California citizen, and Defendant Broadcom, a corporation located in California, from unreasonable restraints on lawful trade.

New Jersey common law expresses a substantial interest in setting the standards for fair business competition, including protecting its citizens from having their trade secrets stolen. *See Whitmyer Bros., Inc. v. Doyle,* 58 N.J. 25, 33, 274 A.2d 577 (1971) ("The employer's legitimate interests in protecting his trade secrets and the like have been long recognized even in cases without noncompetitive agreements").

Section 16600 expresses California's strong public policy in favor of employee mobility. *Application Group, Inc. v. Hunter Group, Inc.,* 61 Cal.App.4th 881, 900, 72 Cal.Rptr.2d 73 (1998); *see also Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1329 (9th Cir.1980) (recognizing that California law protects an individual's substantial interest in unrestrained pursuit of his livelihood and right to change employers).

However, Plaintiff argues that because this action does not involve a covenant not to compete, the public policy of Section 16600 does not apply to the issue before this Court. *See* Pl.'s Opp'n at 15. However, through use of the "inevitable disclosure" doctrine, Plaintiff is attempting to enjoin Defendant O'Neill from obtaining employment with Defendant Broadcom which would allow him to work with DSL products or applications. The "theory of inevitable disclosure" relied on by Plaintiff "creates a de facto covenant not to compete [and] run[s] counter to the strong public policy in California favoring employee mobility." *Bayer Corp. v. Roche Molec-*

*ular Sys., Inc.,* 72 F.Supp.2d 1111, 1120 (N.D.Cal.1999). Thus, because Plaintiff's theory of "inevitable disclosure" raises the issue of the existence of a de facto covenant not to compete, Section 16600 and the public policy for which it stands may be applicable to the instant action.

Therefore, both California and New Jersey have a strong interest in applying their respective laws to the instant action.

Third, this Court must determine if the interest of one jurisdiction would be more impaired if its policies were subordinated to those of the other jurisdiction. *See Liew,* 685 F.2d at 1196. The "conflict should be resolved by applying the law of the jurisdiction whose interest would be more impaired if its law were not applied." *Id.*

With regard to trade secret protection, this Court finds that the interest expressed by both states will be equally honored under California and New Jersey law.

Since California and New Jersey have both expressed a public policy in favor of protecting trade secrets, the interest of one state would not be impaired by resolution of the matter under the laws of the other state. *See Paolino v. Channel Home Centers,* 668 F.2d 721, 724 (3d Cir. 1991) (holding that since Tennessee and Pennsylvania both recognize the value of trade secrets, the public policy of the other state will not be offended by litigation in the Pennsylvania forum). Thus, neither states' interest in protecting trade secrets will be impaired if this case is litigated under the laws of the other state.

However, litigation under New Jersey law will impair the public policy of California favoring employee mobility. New Jersey does not have a statute similar to Section 16600 or a comparable public policy regarding employee mobility. If New Jersey law was to be applied, California

would risk the subordination of its interest in protecting the mobility of its citizens. Thus, California's interests could be impaired through application of New Jersey law.

For the foregoing reasons, the Court finds that California law applies to this action.

## B. Misappropriation of Trade Secrets

Plaintiff brings a claim for misappropriation of trade secrets against both Defendants Broadcom and O'Neill. *See* Compl. at 8. Plaintiff alleges that in performing his new duties while employed at Defendant Broadcom, Defendant O'Neill will "inevitably rely upon GlobeSpan's proprietary information." *Id.* at 7–8, ¶ 22. Plaintiff further alleges that Defendant Broadcom will "unfairly benefit from decisions made by O'Neill using GlobeSpan information." *Id.* at 8, ¶ 23.

■ To state a claim for misappropriation of trade secrets, Plaintiff must allege: (1) the existence of subject matter which is capable of protection as a trade secret; (2) the secret was disclosed to the defendant, ... under circumstances giving rise to a contractual or other legally imposed obligation on the part of the disclosee not to use or disclose the secret to the detriment of the discloser; and (3) if the defendant is an employee or former employee of the plaintiff ... the facts alleged must also show that the public policy in favor of the protection of the complainant's interest in maintaining the secret outweighs the interest of the employee in using his knowledge to support himself in other employment. *Cal Francisco Inv. Corp. v. Vrionis*, 14 Cal.App.3d 318, 321–22, 92 Cal.Rptr. 201 (1971) citing *Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244, 250, 67 Cal.Rptr. 19 (1968). To find misappropriation, California courts require that the trade secret be used by the Defendant or disclosed by the Defendant to a third party. *See* Cal. Civil Code § 3426.1(b); *see also Cal Francisco Inv. Corp.*, 14 Cal.App.3d at 321, 92 Cal. Rptr. 201.

In the instant motion to dismiss, Defendant Broadcom contends that Plaintiff has failed to allege a misappropriation by Broadcom, as required by the second element of the cause of action. *See* Def.'s Mot. at 5.

Plaintiff has not alleged that Defendant Broadcom has used or disclosed Plaintiff's trade secrets. Thus, Plaintiff has not alleged misappropriation by Defendant Broadcom, as required by the claim.

■ However, Plaintiff argues that it has sufficiently alleged misappropriation against Defendant Broadcom because it has alleged that trade secrets will be "inevitably disclosed" by Defendant O'Neill. The inevitable disclosure doctrine, as first articulated in *PepsiCo, Inc. v. Redmond*, holds that "a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995).

The Central District of California has considered and rejected the inevitable disclosure doctrine. *See Danjaq, LLC v. Sony Corp.*, 1999 WL 317629 at *1 n. 1 (C.D.Cal. Mar. 11, 1999) (finding that reliance on the inevitable disclosure doctrine is misplaced as "*PepsiCo* is not the law of the State of California or the Ninth Circuit."); *see also Computer Sciences Corp. v. Computer Assoc. Int'l, Inc.*, 1999 WL 675446 (C.D.Cal. Aug. 12, 1999); *see also Bayer Corp.*, 72 F.Supp.2d at 1120 (holding that the inevitable disclosure doctrine runs counter to California's public policy favoring employee mobility). Therefore, the inevitable disclosure doctrine is inapplicable to the instant case.

Plaintiff has not alleged that either Defendants Broadcom or O'Neill will use or disclose Plaintiff's trade secrets. Furthermore, Plaintiff's allegation of "inevitable disclosure" by Defendant O'Neill fails for two reasons. First, "inevitable disclosure" by Defendant O'Neill doesn't implicate Defendant Broadcom by any allegations in the Complaint. Second, the "inevitable disclosure" doctrine is not recognized in this District. Therefore, Plaintiff has failed to state a claim for trade secret misappropriation against Defendant Broadcom.

### C. Unfair Competition

 Plaintiff also brings a claim for unfair competition against both Defendants Broadcom and O'Neill. *See* Compl. at 9. Defendant Broadcom contends that Plaintiff's unfair competition claim mirrors its misappropriation claim and is similarly defective. *See* Mot. at 9. Plaintiff has stated that "[i]f permitted to continue working at Broadcom, O'Neill will inevitably disclose such trade secrets and confidential, proprietary information to Broadcom's benefit and GlobeSpan's detriment." Compl. at 9, ¶ 33.

"A plaintiff alleging unfair business practices under the unfair competition statutes 'must state with reasonable particularity the facts supporting the statutory elements of the violation.'" *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1316 (N.D.Cal.1997) citing *Khoury v. Maly's of California*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993). In *Silicon Knights*, the Court dismissed a Plaintiff's statutory and common law unfair competition claims because they were based upon failed allegations of misappropriation of trade secrets. *See Silicon Knights*, 983 F.Supp. at 1316 (holding that because "Plaintiff's [other] causes of action fail to state claims for relief against ... Defendants, there is no underlying basis for the unfair competition claims.").

Plaintiff's unfair competition claim against Defendant Broadcom mirrors its claim for misappropriation of trade secrets by similarly relying on the "inevitable disclosure" doctrine as asserted against Defendant O'Neill. As previously noted, such allegations fail to state a claim against Defendant Broadcom for several reasons. Furthermore, Plaintiff has not pled any additional facts in its complaint to support a claim for unfair competition against Defendant Broadcom. Thus, this Court dismisses Plaintiff's claim for unfair competition.

### V. CONCLUSION

For the foregoing reasons, Defendant Broadcom's motion to dismiss Plaintiff's claims of misappropriation of trade secrets and unfair competition is GRANTED.

Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7.11, the Court hereby dispenses with oral argument on the above Motion. Therefore, the parties are ***not*** to appear before this Court on *July 23, 2001 at 10:00 a.m.*

**IT IS SO ORDERED.**