[Civ. No. 21338. Fourth Dist., Div. Two. Feb. 26, 1980.]

ISMAEL HERNANDEZ, Plaintiff and Appellant, v.
JOSEPH BURGER et al., Defendants and Respondents.

COUNSEL

Casey, Gerry, Casey, Westbrook & Reed and T. Michael Reed for Plaintiff and Appellant.

McCormick & Royce, Patrick A. McCormick, Jr., and Jack Winters for Defendants and Respondents.

OPINION

KAUFMAN, J.—Plaintiff Ismael Hernandez (hereafter plaintiff), a Mexican resident and citizen, suffered personal injuries on February 2, 1975, when he was struck by a vehicle driven by defendant Steven Burger and owned by defendant Joseph Burger (hereafter defendants) in the State of Baja California, Mexico. Defendants were and are California residents and citizens of the United States.

On January 9, 1976, plaintiff instituted this action for damages against defendants in the Orange County Superior Court. The trial court granted defendants' motion for partial summary judgment, determining that the Mexican law of damages, which placed a limit of $2,000 on plaintiff's recovery, was applicable to the action. Thereupon the parties entered into a stipulation for entry of judgment in favor of plaintiff for $2,000, reciting that plaintiff would have recovered substantially more under California's law of damages. The parties also agreed that the stipulation for judgment was not to prejudice either party's right to appeal. Plaintiff appeals from the judgment, contending that the trial court erred in determining that the Mexican law of damages rather than that of California was applicable to the case.

For purposes of appeal, liability on the part of defendants is admitted. The sole question, therefore, is whether California's law of damages or Mexico's should be applied to measure the recovery of a resident and citizen of Mexico whose injuries and damages resulted from an accident in Mexico caused by a vehicle owned by and driven by citizens of the United States who are residents of the State of California.

■ The parties recognize that questions of choice of law are determined in California by the "governmental interest analysis" stemming from the landmark decision in *Reich* v. *Purcell* (1967) 67 Cal.2d 551 [63 Cal.Rptr. 31, 432 P.2d 727]. Under the "governmental interest analysis" approach, the forum "'must search to find the proper law to apply based upon the interests of the litigants and the involved states.'" (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 161 [148 Cal.Rptr. 867, 583 P.2d 721], quoting from *Reich* v. *Purcell, supra*, 67 Cal.2d at p. 553; *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 579-580 [114 Cal.Rptr. 106, 522 P.2d 666].) In undertaking this determination, the competing interests of the parties and the several states or countries[1] are ascertained in relation to the specific issue in controversy. (*Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 316 [128 Cal.Rptr. 215, 546 P.2d 719]; *Hurtado* v. *Superior Court, supra*, 11 Cal.3d at pp. 579-580; *Reich* v. *Purcell, supra*, 67 Cal.2d at p. 555; *Beech Aircraft Corp.* v. *Superior Court* (1976) 61 Cal.App.3d 501, 518-519 [132 Cal.Rptr. 541].)

Plaintiff's position is: First, the forum will, even in cases involving foreign interests, apply the rule of decision of the forum as a matter of course unless it is demonstrated that the foreign rule of decision will serve an interest or policy of the foreign state so that it is an appropriate rule of decision for the forum to apply to the case before it. (*Hurtado* v. *Superior Court, supra*, 11 Cal.3d at p. 581; *Beech Aircraft Corp.* v. *Superior Court, supra*, 61 Cal.App.3d at p. 522; see also *Bernhard* v. *Harrah's Club, supra*, 16 Cal.3d at pp. 317-318.) Second, as a concomitant, it is the burden of the advocate of the foreign rule of decision to show that the foreign jurisdiction has some policy or interest that would be furthered by the application of its rule. And, finally, defendants have failed to show that Mexico has any legitimate interest in the application of its limitation of damages law inasmuch as (a) the sole interest of a state or country in so limiting damages is to protect resident defendants against overwhelming economic burdens (see *Hurtado* v. *Superior Court, supra*, 11 Cal.3d at pp. 580-581; *Reich* v. *Purcell, supra*, 67 Cal.2d at p. 556), and (b) defendants in the case at bench were not and are not Mexican residents but, rather, citizens of the United States and residents of the State of California.

---

[1]"The governmental interests approach is applicable not only to situations involving multistate contacts but also to those involving a state of the United States vis-à-vis a political entity of a foreign country." (*Hurtado* v. *Superior Court, supra*, 11 Cal.3d at p. 580, fn. 2, citing *Kasel* v. *Remington Arms Co.* (1972) 24 Cal.App.3d 711, 731 [101 Cal.Rptr. 314].)

Plaintiff's position is unsound. He is mistaken in his assertion that no legitimate interest of Mexico would be furthered by the application of its rule of damages to the case at bench. He is also mistaken in his conclusion that an interest or policy of the State of California would be served by application of its law of damages.

■ The modern authorities recognize that in many so-called conflict of laws situations, there is no real conflict, only a "false conflict," because, although the law in the several pertinent jurisdictions may be different, one or more of the jurisdictions has no legitimate interest in having its law applied to the case. As the court explained in *Hurtado*: "Although the two potentially concerned states have different laws, there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied. (Comment,. *False Conflicts*, 55 Cal.L.Rev. [p. 74] at p. 77; Cavers, *op. cit. supra* [The Choice of Law Process (1965)], pp. 89-90.) 'When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied.' (Currie, Selected Essays on Conflicts of Laws (1963) p. 189.)" (11 Cal.3d at p. 580, fn. omitted; accord: *Offshore Rental Co.* v. *Continental Oil Co., supra*, 22 Cal.3d at p. 163; *Bernhard* v. *Harrah's Club, supra*, 16 Cal.3d at pp. 317, 318-319; see Horowitz, *The Law of Choice of Law in California—A Restatement* (1974) 21 UCLA L.Rev. 719, 723, 729-736.)

There is no question but that the laws of California and Mexico governing the damages recoverable in a case such as this are different. California's Civil Code section 3333 permits recovery of "the amount which will compensate for all the detriment proximately caused. . . ." The law of Mexico limits recovery to the amount of the injured party's medical and rehabilitative expenses and lost wages at the minimum wage rate. (Civ. Code of the State of Baja California (Norte), art. 1793; Ley Federal del Trabajo, arts. 487, 491 and 495.) ■ However, in the case at bench no legitimate interest or policy of the State of California would be served by the application of its unlimited damages rule because the plaintiff is a resident and citizen of Mexico, the accident occurred in Mexico, and the only connection California has with the case is that the defendants happen to be California residents and that California is the forum.

Plaintiff relies heavily on *Hurtado* v. *Superior Court, supra*, 11 Cal.3d 574, for both the proposition that application of the domestic law of California as the rule of decision in the case at bench would serve a legitimate California interest or policy and the proposition that no legitimate interest of Mexico would be served by the application of its limited damages law. Insofar as the interest of the State of California is concerned, plaintiff's reliance on *Hurtado* is entirely unjustified. As plaintiff correctly points out, *Hurtado* was a "false conflict" case. The court determined that no interest or policy of Mexico would be served by application of its limited damages rule but that there was a policy or interest of the State of California to be served by the application of its rule. Identifying the California interest, the court stated: "Therefore when the defendant is a resident of California and the tortious conduct giving rise to the wrongful death action occurs *here*, California's deterrent policy of full compensation is clearly advanced by application of its own law." (11 Cal.3d at p. 584, (italics added.) In the case at bench, by contrast, the accident occurred in Mexico, and California has no legitimate interest in the possible deterrent effect of its unlimited recovery rule on conduct in Mexico.

Further, since plaintiff was and is a resident and citizen of Mexico, California has no legitimate concern in extending its unlimited damages rule to him to avoid his becoming a ward of the state. It thus becomes clear that California has no interest at all in applying its law of damages to this case. The holding with respect to California's interest in *Reich* v. *Purcell, supra*, is directly in point. In *Reich* the law of three states was potentially involved. The accident occurred in Missouri; the decedent and the plaintiffs resided in Ohio; and the defendant was a resident of California. (See 67 Cal.2d at pp. 552, 555-556.) Notwithstanding the fact that California was the forum and that the plaintiffs had become California residents after the accident, the court held that no legitimate interest of the State of California would be served by applying California's own domestic rule of damages. (67 Cal.2d at pp. 555-556.)

The absence of any legitimate California interest to be served by application of its domestic rule of damages is also indicated by *Howe* v. *Diversified Builders, Inc.* (1968) 262 Cal.App.2d 741, 745-746 [69 Cal.Rptr. 56]. While the underlying facts in that case were dissimilar from those in the case at bench, in terms of legal principles, the *Howe* decision is indistinguishable on any significant basis. The basis for the

decision was that California could have no legitimate interest in applying the rule of decision embodied in its domestic law when California's sole connection with the case was that the defendants were California corporations and that California was the forum. (262 Cal.App.2d at p. 746.) Here those are again the only circumstances connecting California to the case.

Without citation of supporting authority, plaintiff urges that the law of California has developed "over many years of legislative as well as judicial toil," and that the courts of California will apply its law "as that law found most desirable and just by legislative and judicial experience." It is then argued that "the very history and tradition of California law" gives California courts an interest in applying this law "so painstakingly developed over the years." Not so. Governmental interest analysis "does not involve the court in 'weighing' the conflicting governmental interests 'in the sense of determining which conflicting law manifest[s] the "better" or the "worthier" social policy on the specific issue.'" (*Offshore Rental Co.* v. *Continental Oil Co., supra*, 22 Cal.3d at p. 165, quoting from Horowitz, *supra*, 21 UCLA L.Rev. at p. 753; accord: *Bernhard* v. *Harrah's Club, supra*, 16 Cal.3d at pp. 320-321.) "Rather, the resolution of true conflict cases may be described as 'essentially a process of allocating respective spheres of lawmaking influence.'" (*Offshore Rental Co.* v. *Continental Oil Co., supra*, quoting Baxter, *Choice of Law and the Federal System* (1963) 16 Stan.L.Rev. 1, 11-12; see *Cable* v. *Sahara Tahoe Corp.* (1979) 93 Cal.App.3d 384, 393-394 [155 Cal.Rptr. 770].)

With respect to the interest of Mexico, plaintiff urges: "The only real difference between the facts in the *Hurtado* case and the facts in the instant case is that in *Hurtado* the accident occurred in California while in the instant case the accident occurred in Mexico. However, the Supreme Court in *Hurtado* did not hold that the place of the wrong was controlling[2] so far as the decision was concerned. Here, as in *Hurtado*, we are dealing with a California defendant; thus, Mexico has no interest in applying its limitation on damages." Once again, plaintiff fails to grasp the significance of the fact that in the case at bench the accident occurred in Mexico. ■ It is true that the place of the wrong is no longer treated as a controlling factor where application of the law of another jurisdiction having a connection with the accident will serve a

2As pointed out earlier, the Court in *Hurtado* did specifically give recognition and weight to the fact that the accident had occurred in California. (11 Cal.3d at p. 584.)

legitimate interest or policy of the other jurisdiction. However, the situs of the injury remains a relevant consideration. (*Offshore Rental Co.* v. *Continental Oil Co., supra*, 22 Cal.3d at p. 168; *Cable* v. *Sahara Tahoe Corp., supra*, 93 Cal.App.3d at p. 397.) Indeed, with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest. (*Reich* v. *Purcell, supra*, 67 Cal.2d at p. 556; see *Hurtado* v. *Superior Court, supra*, 11 Cal.3d at p. 583; *Cable* v. *Sahara Tahoe Corp., supra*, 93 Cal.App.3d at pp. 395, 397-398; cf. *Offshore Rental Co.* v. *Continental Oil Co., supra*, 22 Cal.3d at pp. 168-169.) And where, as here, no legitimate interest or policy of the forum will be served by the application of its rule of law, no true conflict of laws exists, and the law of the place of the wrong should be applied if the policy underlying the law of that jurisdiction will be served. (See *Offshore Rental Co.* v. *Continental Oil Co., supra*, 22 Cal.3d at p. 163; *Bernhard* v. *Harrah's Club, supra*, 16 Cal.3d at pp. 317, 318-319; *Hurtado* v. *Superior Court, supra*, 11 Cal.3d at p. 580.)

Commonly, an interest of the place of the wrong in affecting conduct within its borders is directed at protecting or encouraging industry or commerce. (See, e.g., *Offshore Rental Co.* v. *Continental Oil Co., supra*, 22 Cal.3d at p. 168; *Cable* v. *Sahara Tahoe Corp., supra*, 93 Cal.App.3d at p. 397; *Pacific Diamond Co.* v. *Superior Court* (1978) 85 Cal.App.3d 871, 876, 878 [149 Cal.Rptr. 813].) It is a matter of common knowledge of which a court may take judicial notice that a major, if not the major, industry in Baja California is tourism emanating from the United States, particularly California. ██ Fostering tourism in Baja California is, of course, a legitimate interest of Mexico and the application of Mexico's limited damages law to nonresident motorists might well advance that interest.

Plaintiff relies on discussions in both *Hurtado* and *Reich* in which it was indicated that the primary interest a jurisdiction has in limiting damages in wrongful death actions is the protection of resident defendants against excessive or oppressive economic liability. (See *Hurtado* v. *Superior Court, supra*, 11 Cal.3d at pp. 582-583, 586; *Reich* v. *Purcell, supra*, 67 Cal.2d at p. 556.) That was, of course, true in those cases. In *Hurtado* the accident occurred in California, not in Mexico,

and Mexico could have no legitimate interest in affecting the conduct of California residents in California.

Similarly, although the accident in *Reich* occurred in Missouri, the court held that Missouri had no significant interest in applying its law limiting recovery of damages in wrongful death cases because no recovery for wrongful death in that case would have any effect whatever on Missouri. The defendant was a California resident on his way to vacation in Illinois; the decedent and the plaintiffs were residents of Ohio. The court reasoned: "That concern [avoiding the imposition of excessive financial burdens on defendants] is also primarily local and we fail to perceive any substantial interest Missouri might have in extending the benefits of its limitation of damages to travelers from states having no similar limitation. Defendant's liability should not be limited when no party to the action is from a state limiting liability and when defendant, therefore, would have secured insurance, if any, without any such limit in mind. A defendant cannot reasonably complain when compensatory damages are assessed in accordance with the law of his domicile and plaintiffs receive no more than they would had they been injured at home." (67 Cal.2d at p. 556.)

The reasoning of the *Reich* court points up the fundamental differences between the circumstances in that case and those in the case at bench. Here one party, plaintiff, *is* a resident of a jurisdiction limiting liability; here, plaintiff *was* injured at home; and here, plaintiff *would* recover more than he would at home if the law of Mexico were not applied. As to the consideration of insurance, even if we assume that defendants were insured for liability arising out of an accident in Mexico, it is most likely that the coverage afforded by such insurance and the premium paid therefor were fixed with the Mexican limited damages law in mind.

We recognize that *Hurtado* and *Reich* distinguished the policies or interests involved in the creation of a cause of action (compensating resident plaintiffs) from the policies or interests involved in the adoption of a rule limiting the amount of damages recoverable (protecting resident defendants from excessive financial burdens). (*Hurtado v. Superior Court, supra,* 11 Cal.3d at pp. 582-583, 586; *Reich v. Purcell, supra,* 67 Cal.2d at p. 556.) However, where a jurisdiction, here Mexico, is interested both in the fact that the accident occurred within its borders *and* in the fact that the person seeking compensation is a resi-

dent of that jurisdiction, we do not believe the interest of the state in creating a cause of action or recognizing a right to recover damages in the first instance can be totally divorced from its concurrent interest in limiting the amount of damages recoverable. It may well be that no cause of action would have been recognized had the amount of damages recoverable not been limited. Here, for example, Mexico's recognition of a right to damages and its limitation of the amount recoverable in all likelihood reflect a balancing and accommodation of competing interests based on the societal values and economic and commercial circumstances prevailing in Mexico. Thus, in this case it cannot be said that Mexico's law limiting the amount of damages recoverable is entirely unrelated to her interest in affecting conduct in Mexico.

We conclude that the interest of Mexico in the application of its law limiting damages to an accident occurring within its borders resulting in injury to one of its residents caused by a nonresident defendant is not wholly lacking; that the State of California has no interest whatever in applying its unlimited damages law to such a case; and that the trial court was correct in determining that the law of Mexico should be applied to limit plaintiff's damages in this instance.

Accordingly, the judgment is affirmed.

Tamura, Acting P. J., and Morris, J., concurred.

A petition for a rehearing was denied March 18, 1980, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1980.