Richard Lee BROWNE et al., Plaintiffs,

v.

McDONNELL DOUGLAS CORPORA-
TION, a corporation, Defendant.

Alfred PEETZ et al., Plaintiffs,

v.

McDONNELL DOUGLAS CORPORA-
TION, a corporation, Defendant.

Zeynep Buge GUNER et al., Plaintiffs,

v.

McDONNELL DOUGLAS CORPORA-
TION, a corporation, Defendant.

Alheid LEENDERDSE et al., Plaintiffs,

v.

McDONNELL DOUGLAS CORPORA-
TION, a corporation, Defendant.

Jeremy Nicholas BOWDLER et
al., Plaintiffs,

v.

McDONNELL DOUGLAS CORPORA-
TION, a corporation, Defendant.

Afet HAMAMZI, individually, and Cemal-
ije Hamamzi, by and through her Guard-
ian ad Litem, Mrs. H. Hamamzi, as heirs
of Hilmi Hamamzi, deceased, Plaintiffs,

v.

McDONNELL DOUGLAS CORPORA-
TION, a corporation, Defendant.

Nos. C–77–2016–WWS, C–77–2030–WWS,
C–77–2031–WWS, C–78–0997–WWS, C–
78–2935–WWS and C–79–2804–WWS.

United States District Court,
N. D. California.

Dec. 19, 1980.

⌐⊶13

Gerald C. Sterns, John C. Elstead, Law Offices of Gerald C. Sterns, San Francisco, Cal., for plaintiffs.

Edwin W. Green, Philip R. Diamond, James C. Krieg, Mary E. Reilley, Bronson, Bronson & McKinnon, San Francisco, Cal., James M. Fitzsimons, Mendes & Mount, New York City, John J. Hennelly, Jr., Timothy R. Cappel, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendant McDonnell Douglas Corp.

SCHWARZER, District Judge.

## FACTUAL BACKGROUND

This action arises out of a midair collision between a Hawker Siddley Trident 3 and a McDonnell Douglas DC–9 that occurred at 33,000 feet near Zagreb, Yugoslavia, on September 10, 1976, while both planes were under "positive control" by the air traffic control center at Zagreb. At the very moment the Trident 3 was crossing over Zagreb at 33,000 feet on course to Istanbul, the DC–9 was climbing to 35,000 feet following instructions from Zagreb air traffic control which led it directly through the altitude and airspace occupied by the Trident 3. Instead of warning the DC–9 of the impending collision, the Zagreb air traffic controller incorrectly advised the crew of the DC–9 seconds before the collision that there was a 500 foot vertical separation between it and the Trident 3. Seconds before the collision, the DC–9 was instructed to maintain altitude at the same flight level as the Trident 3. The collision occurred without any evasive action being taken by either crew.

The DC–9 had been manufactured by McDonnell Douglas in Long Beach, California and was owned and operated by a Yugoslavian airline, Inex Adria. The Trident 3 was owned and operated by British Airways. Crew and passengers of both aircraft were nationals of Yugoslavia, England, Turkey, West Germany, and Australia. Plaintiffs are the heirs of various passengers from England, Germany, Australia and Turkey. McDonnell Douglas is the sole defendant in the present action. However, several lawsuits arising out of the accident are currently pending in Yugoslavia. Both the Yugoslav government and Inex Adria are named as defendants in at least three of those suits. In addition, the air traffic controller responsible for the collision has been found criminally negligent by Yugoslav authorities.

Plaintiffs contend that California law applies to the substantive issues of liability and damages, and that California's rule imposing joint and several liability on tortfeasors is also applicable. Defendant argues that the facts of the accident mandate that the substantive law of Yugoslavia govern both the strict liability and the joint and several liability issues, and that the substantive law of the domiciles of the various plaintiffs govern the issue of damages.

## DISCUSSION

In a diversity action, a federal court in California must apply California's choice of law rule. *Klaxon Company v. Stentor Electric Mfg. Co.*, 318 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Strassberg v. New England Mutual Life Ins. Co.*, 575 F.2d 1262 (9th Cir. 1978). In *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), California abandoned the rule that the controlling law was the law of the place where the tort occurred. Instead it adopted the more flexible governmental in-

terest analysis to determine which law must be applied. Under the government interest analysis, California will apply its own law unless it is shown that there is a compelling reason to displace forum law. *Kasel v. Remington Arms Co.*, 24 Cal.App.3d 711, 101 Cal.Rptr. 314 (1972). There is no compelling reason to displace the law of an interested forum unless such a choice of law would impair the interest of a foreign jurisdiction. *Cf. Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976).

California has defined the relevant government interests in a wrongful death action as follows: (1) compensation for survivors, (2) deterrence of wrongful conduct, and (3) limitation upon the damages recoverable. *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 112, 522 P.2d 666 (1974). "[A]ll three aspects are primarily local in character." *Id.* That is, the state is concerned with tortious conduct within its borders, with compensation for local plaintiffs, and with the limitation of damages payable by resident defendants. The government interests which may be implicated must be analyzed separately with respect to each issue presented by the case; this analysis will not necessarily result in the same choice of law for each issue. *Beech Aircraft Corp. v. Superior Court*, 61 Cal.App.3d 501, 132 Cal.Rptr. 541 (1976); *In re Paris Air Crash*, 399 F.Supp. 732, 742 (C.D.Cal.1975).

This case presents three separate issues: products liability; wrongful death recovery; and the imposition of joint and several liability. Each of the government interests defined in *Hurtado* is implicated by these issues, as shown in the following paragraphs.

First, the plaintiffs are domiciled in West Germany, Australia, England and Turkey. All of these jurisdictions have an interest in full compensation of their resident plaintiffs, but are not concerned with the other two government interests identified in *Hur-*

*tado.* No relevant conduct occurred within their borders and none of the tortfeasors identified in this litigation resides in any one of these jurisdictions.

Second, wrongful conduct allegedly took place in two jurisdictions: in California, where McDonnell Douglas allegedly defectively designed the DC–9 cockpit, and in Zagreb, Yugoslavia, where the Yugoslav air traffic control directed the DC–9 into the same airspace as that occupied by another airplane. Two jurisdictions therefore have an interest in deterring wrongful conduct within their respective borders.

Finally, tortfeasors reside in at least two jurisdictions, California and Yugoslavia. McDonnell Douglas is the sole defendant named in the present action in California. Various Yugoslav parties have been named as defendants in pending lawsuits in Yugoslavia. In addition, the air traffic controller responsible for the collision has been found criminally negligent by Yugoslav authorities. Two jurisdictions therefore have an interest in the limitation (or apportionment) of damages payable by resident tortfeasors.

Turning now to the particular issues raised by this action, first, no compelling reason warrants displacing the products liability law of California for the allegedly faulty design of the DC–9 by a California manufacturer in Long Beach, California.[1] *See Kasel, supra.* No other jurisdiction has been shown to have an interest which would be impaired if its law were not applied on this issue. Even if Yugoslavia were interested in applying its liability rule to the manufacture of the DC–9 in California on the ground that the consequences of the defective design occurred in Yugoslavia, there is no "true conflict" between California and Yugoslavia on this issue. Yugoslavia recognizes a cause of action for "objective liability" which is simi-

---

1. Although the DC–9 was manufactured for export, it could have been resold for use within the United States. That possibility is sufficient to give California a continuing interest in the soundness of the design of such an aircraft.

lar to strict liability.[2] When the laws of two interested jurisdictions do not differ significantly on an issue, the apparent conflict is a "false conflict" and the court will apply the law of the forum. *See Kasel, supra*, and *Bernhard, supra*.

■ Nor do the states of domicile of the various plaintiffs which may have different and perhaps more restrictive rules governing wrongful death recovery have an interest in displacing California's liberal rules on the issue of recoverable damages. *Cf. Hurtado, supra*, in which California declined to apply Mexico's rule limiting damages to the claim of Mexican nationals injured in California by a California resident. Foreign jurisdictions "have no interest in limiting recovery of their resident plaintiffs as against a nonresident" defendant. *In re Paris Air Crash, supra*, at 746; *Colonial Gas Energy System v. Unigard Mutual Insurance Company*, 441 F.Supp. 765 (N.D.Cal. 1977).

■ A different question is presented, however, concerning the choice of law on the issue of joint and several liability. Under California law, any one of the joint tortfeasors may be held liable for the full amount of damages assessed, notwithstanding the right to contribution and indemnity among concurrent tortfeasors. *Sears Roebuck & Co. v. International Harvester Co.*, 82 Cal.App.3d 492, 147 Cal.Rptr. 262, 264 (1978). If all the tortfeasors have not been joined in the action, California courts will not allow the concurrent fault of an absent tortfeasor to be considered for the purpose of reducing the percentage of damage payable by the present tortfeasor. *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). That result is supported by a value judgment which places the state's interest in compensating its injured plaintiffs above the equitable apportionment of damages among joint tortfeasors. *Id.* However,

California's interest in providing maximum recovery for resident plaintiffs is not implicated in the present case because none of the plaintiffs are California residents. As noted above, California has an interest in applying its products liability rule to conduct occurring within its borders. But the principle of joint and several liability would apply to impose on McDonnell Douglas all the damages recoverable by plaintiffs, even though a substantial proportion of the fault is indisputably allocable to conduct by others which occurred in Yugoslavia. Therefore, the only significant California interest implicated on the joint and several liability issue is the third *Hurtado* interest: limitation of damages payable by a resident defendant. That interest would be impaired by the application of California law; the California defendant cannot implead the Yugoslav tortfeasors in this action because they are not amenable to jurisdiction in California. Nor is it clear that the California defendant, if it is held liable here, could obtain partial indemnity by filing an action in Yugoslavia based on the negligence of the Yugoslav air traffic control. The concurrent tortfeasors not being parties to this action, no finding of liability on their part would be given *res judicata* effect in a subsequent indemnity action. *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892 (1942). If the California principle of joint and several liability were applied, therefore, the only California interest involved would be seriously impaired. Defendant's right to partial indemnity would be unenforceable, and California's interest in the equitable apportionment of liability among a California tortfeasor and concurrent tortfeasors who are not residents would thereby be frustrated.

■ Yugoslavia, on the other hand, follows the principle of proportionate liability under which a defendant is only held to pay that portion of the damages for which it is held responsible. Joint and several liability

---

**2.** According to the declaration of Andrej Stanovnik, an expert on Yugoslav law, Yugoslavia recognizes a cause of action for objective liability, similar to strict liability, and plaintiffs would be entitled to assert their wrongful death claims in a Yugoslav court. Mr. Stanovnik further indicates that McDonnell Douglas would be subject to personal jurisdiction in Yugoslavia.

may be imposed only if all responsible defendants are joined in the action.[3] This is therefore a case where the California and Yugoslav rules are materially different on a critical issue, and California has no interest in applying its own law. The question remains whether it has been shown that application of Yugoslav law on this issue will further the interests of Yugoslavia.

The application of California law would impose the entire liability on McDonnell Douglas for an accident which occurred in Yugoslavia rather than apportioning a share of the liability against Yugoslavian tortfeasors. Such a choice of law would impair Yugoslavia's interest in deterring the tortious conduct of its residents within its borders. *Cf. Hurtado, supra,* in which California applied California law to an accident caused by California residents in California; the court reasoned that California had an interest in deterring conduct in California which wrongfully takes life. Also impaired would be Yugoslavia's interest in protecting foreign business firms engaged in trade with Yugoslavia against suffering disproportionate liability for injuries caused by Yugoslav parties. *See Hernandez v. Burger,* 102 Cal.App.3d 795, 162 Cal.Rptr. 564, 566–67 (1980) [Mexico's rule limiting damages applied to action by Mexican national against California resident for injury suffered in Mexico; Mexico had an interest in promoting tourism which was furthered by protecting nonresident motorists from excessive judgments.]

Therefore, because California has no interest in applying its recovery rule to impose disproportionate liability upon its resident defendant when all the tortfeasors are not subject to jurisdiction here, and because Yugoslavia's interest in deterring wrongful conduct within its borders would be impaired if its law were not applied, there is a compelling reason to displace forum law on this issue. Even if the result were to limit damages recoverable by plaintiffs, it would be justified because California has no interest in impairing the ability of California corporations to compete in other jurisdictions by imposing upon them obligations to foreign residents which exceed those imposed by the foreign jurisdictions. *Howe v. Diversified Builders, Inc.,* 262 Cal.App. 741, 69 Cal.Rptr. 56, 58 (1968) [Nevada plaintiff injured in Nevada by California corporation subject to Nevada rule limiting recovery.] *See also Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972) [New York applied Ontario guest statute to bar recovery in a wrongful death action by representative of Ontario resident killed in Ontario in a car driven by New York resident.] In fact, however, the application of Yugoslav law here would not limit the damages recoverable by plaintiffs from the tortfeasors as a whole, but would merely limit the damages recoverable by foreign plaintiffs in this California action against a sole California defendant. Plaintiffs are free to proceed against the Yugoslav tortfeasors in Yugoslavia, but the California defendant is not free to implead the Yugoslav parties and thereby secure its right to indemnity. *See American Motorcycle Ass'n, supra; Safeway v. Nest-Kart,* 21 Cal.3d 322, 146 Cal. Rptr. 550, 579 P.2d 441 (1978) [the court authorized apportionment of damages between a negligent and a strictly liable tortfeasor]. If California's rule were to apply to this essentially foreign controversy, therefore, its application would visit harsher results on the resident defendant than the rule normally contemplates.

For the foregoing reasons, the Court will apply Yugoslavia's rule of proportionate liability to the claim against McDonnell Douglas. As to the other issues, strict liability and wrongful death recovery, forum law will apply.

Counsel are directed to appear for a status conference to schedule further proceedings on January 9, 1981, at 10 a. m.

IT IS SO ORDERED.

---

**3.** Declaration of Andrej Stanovnik. The Yugoslavian principle is "responsibility in solidum."