[No. B014562. Second Dist., Div. Three. Apr. 7, 1986.]

RAYMOND ZIMMERMAN, Plaintiff and Appellant, v.
ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Robert N. Benjamin and Victoria R. Kendrick for Plaintiff and Appellant.

Hiestand & Brandt and Herbert H. Hiestand, Jr., for Defendant and Respondent.

Irell & Manella, Gregory R. Smith, Harvey I. Saferstein and Wayne M. Barsky as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**DANIELSON, J.**—Plaintiff and appellant Raymond Zimmerman appeals from an order of dismissal made after the trial court sustained, without leave to amend, the demurrer of defendant and respondent, Allstate Insurance Company. We affirm the order.

FACTS AND PROCEDURAL HISTORY

On June 13, 1979, plaintiff, a truck driver then residing in Illinois, was injured in a collision between his truck and a vehicle driven by Aaron McIntosh, a resident of Oklahoma, where the collision occurred. Plaintiff was hospitalized in Oklahoma for several weeks, then convalesced at the home of his sister in Kentucky for several months. In late 1979 or early 1980, he moved to California, and has since resided in this state.

On January 15, 1981, represented by Oklahoma attorneys, plaintiff commenced a civil action against McIntosh in an Oklahoma state court to recover damages plaintiff allegedly sustained in the accident of June 13, 1979. That action was dismissed without prejudice by the Oklahoma court on February 9, 1983, for failure of plaintiff to appear at the pre-trial conference.

On February 3, 1984, represented by Oklahoma attorneys, plaintiff commenced a civil action against McIntosh in the United States District Court for the Northern District of Oklahoma, based upon the same alleged cause of action. That action was dismissed with prejudice, by the court, on August 27, 1984, the cause of action having been settled.

In September 1984, plaintiff filed a complaint in the Los Angeles County superior court against defendant as insurer of McIntosh,[1] seeking damages for defendant's alleged violation of the California Trade Practices Act (Ins. Code, § 790 et seq.)[2] based upon the alleged actions of defendant in connection with the Oklahoma civil actions. Plaintiff alleged, inter alia, that despite the clear liability of its insured, defendant "refused to effectuate a prompt, fair, and equitable settlement of plaintiff's claim or make any settlement offer at all." Plaintiff also alleged that defendant refused to reveal the applicable policy limits until approximately one month prior to the date set for trial of plaintiff's personal injury action in federal court in Oklahoma, when defendant revealed that the policy limits were only $10,000, or less than the amount of the medical bills incurred by plaintiff as a result

---

[1]Defendant is an Illinois corporation doing business in both Oklahoma and California.

[2]Unless otherwise specified, all statutory references are to the Insurance Code.

of the accident. Shortly thereafter, the Oklahoma action was settled for $10,000.

In the present action, plaintiff alleged that he was a California resident, and among the class of persons subdivision (h) of section 790.03 was designed to protect, and that defendant did substantial business in the State of California and was therefore subject to the provisions of section 790.03.

Defendant moved to dismiss the action on the ground of inconvenient forum (Code Civ. Proc., § 410.30). The motion was denied on January 30, 1985.

Thereafter, the trial court sustained defendant's demurrer without leave to amend on the ground that the complaint failed to state a cause of action, in that Oklahoma law governs the alleged events, and, under applicable Oklahoma law, a third party could not maintain a bad faith cause of action against an insurer. The present appeal followed.

### ISSUE

■ The sole issue presented on this appeal is whether the trial court properly determined that Oklahoma law controlled on the question whether plaintiff's complaint stated a cause of action. Plaintiff contends that California law governs his action because it arises not from the Oklahoma accident, but from defendant's wrongful conduct toward plaintiff during negotiations following the accident, while plaintiff lived in California. Defendant contends Oklahoma law applies "[b]ecause both the underlying automobile tort action and the alleged tortious conduct on the part of [defendant's] claims adjusters took place entirely within the State of Oklahoma."

### DISCUSSION

■ Questions of choice of law are determined in California by the "governmental interest analysis." Under this approach, "the forum in a conflicts situation 'must search to find the proper law to apply based upon the interests of the litigants and the involved states.'" (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 161 [148 Cal.Rptr. 867, 583 P.2d 721], criticized on another ground in *I. J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327, 337 [220 Cal.Rptr. 103, 708 P.2d 682].)

Under the governmental interest analysis "'[w]hen one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of

the interested state should be applied.'" (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666]; see *Offshore Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d at p. 163.) We therefore examine the laws of the involved states, and the governmental policies underlying the laws, "'preparatory to assessing whether either or both states have an interest in applying their policy to the case.' [Citation.] Only if each of the states involved has a 'legitimate but conflicting interest in applying its own law' will we be confronted with a 'true' conflicts case." (*Offshore Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d at p. 163, citing *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 319 [128 Cal.Rptr. 215, 546 P.2d 719];[3] see also *Hernandez* v. *Burger* (1980) 102 Cal.App.3d 795, 799 [162 Cal.Rptr. 564].)

▓ The present case involved two states: California, the forum, and the present domicile of plaintiff; and Oklahoma, the place of the accident giving rise to the lawsuit, and of the complained of conduct of the defendant, as well as the domicile of the insured. The laws of the two states differ with respect to the question whether a third party may pursue a bad faith cause of action against an insurer. The cause of action is not available to third party claimants in Oklahoma. (*Allstate Ins. Co.* v. *Amick* (Okla. 1984) 680 P.2d 362, 364-365.) The converse is true in California. (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 888-889 [153 Cal.Rptr. 842, 592 P.2d 329].)

The purpose of the California Trade Practices Act is "to regulate trade practices in the business of insurance . . . by defining . . . such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." (§ 790.) The Insurance Commissioner is empowered "to examine and investigate into the affairs of every person engaged in the business of insurance in the State in order to determine whether such person has been or is engaged in any . . . unfair or deceptive act or practice prohibited by Section 790.03. . . ."[4] (§ 790.04.) The commissioner is also

---

[3]In 1978, the California Legislature expressly abrogated *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151] and the cases following it, including *Bernhard,* which had by judicial decree imposed liability on those furnishing alcohol to intoxicated persons who later caused injuries. (Civ. Code, § 1714, subds. (b) and (c); Bus. & Prof. Code, § 25602, subds. (b) and (c); *Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 724 [209 Cal.Rptr. 347, 691 P.2d 1013]; *Cory* v. *Shierloh* (1981) 29 Cal.3d 430, 435-436 [174 Cal.Rptr. 500, 629 P.2d 8].)

[4]Section 790.03 provides, in part: "The following are hereby defined as . . . unfair and deceptive acts or practices in the business of insurance. . . . (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: . . . . (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

empowered to issue orders to show cause, to conduct hearings, to issue cease and desist orders, and to impose penalties for violations of such orders. (§§ 790.05-790.07.)

In *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d at pp. 888-889, our Supreme Court held that the legislature intended that third party claimants were to enjoy certain of the protections afforded by subdivision (h) of section 790.03.

Thus, California has demonstrated an interest in regulating the practices of insurers within this state, as well as in affording redress to California residents damaged by unfair practices of insurers. However, the first of these factors is irrelevant to this case, as the complained of conduct by defendant occurred in Oklahoma, and California has no legitimate interest in the possible deterrent effect of its third party cause of action on conduct in Oklahoma. (See *Hernandez* v. *Burger, supra,* 102 Cal.App.3d 795, 800.)

In *Allstate Ins. Co.* v. *Amick, supra,* 680 P.2d at pp. 364-365, the Supreme Court of Oklahoma acknowledged the insurer's duty to act in good faith and fairly in dealing with its insured, but found no contractual or statutory relationship between the insurer and the third party claimant asserting bad faith.

We conclude that Oklahoma has also demonstrated an interest in regulating the practices of insurers within its borders, and in affording redress to insureds, but has not seen fit to extend protection against bad faith practices to third party claimants. This indicates, as amicus claims, that Oklahoma also has an interest in protecting its defendant insurers and, through them, its insureds, who would ultimately absorb the cost of any extension of the insurers' liability to third persons.

This case thus involves a true conflict between the law of Oklahoma and the law of California. ▮ "In *Bernhard* v. *Harrah's Club, supra,* . . . we stated, 'Once [a] preliminary analysis has identified a true conflict of the governmental interests involved as applied to the parties under the particular circumstances of the case, the "comparative impairment" approach to the resolution of such conflict seeks to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state. This analysis proceeds on the principle that true conflicts should be resolved by applying the law of the state whose interest would be the more impaired if its law were not applied.' [Citation.] [¶] . . . [T]his analysis does not involve the court in 'weighing' the conflicting governmental interests 'in the sense of determining which conflicting law manifest[s] the "better" or the "worthier" social policy on the specific issue. An attempted

balancing of conflicting state policies in that sense . . . is difficult to justify in the context of a federal system in which, within constitutional limits, states are empowered to mold their policies as they wish.' (Fn. omitted.) (Horowitz, *The Law of Choice of Law in California—A Restatement* (1974) 21 UCLA L.Rev. 719, 753.)" (*Offshore Rental Co.* v. *Continental Oil Co.*, supra, 22 Cal.3d 157, 164-165.)

■ Putting aside any notion of the "rightness" of California's protection of third party claimants against unfair practices of insurers, we find that the trial court properly applied Oklahoma law in the particular circumstances of this case. In the final analysis, the only factor supporting plaintiff's claim of California governmental interest in this case is his status as a resident of this state, who will be uncompensated for the alleged wrongs of defendant. (See *Cable* v. *Sahara Tahoe Corp.* (1979) 93 Cal.App.3d 384, 397-398 [155 Cal.Rptr. 770].)

Plaintiff did not become a resident of this state until some months following the accident precipitating the conduct of defendant which is the subject of this lawsuit. Were we to hold that the law of plaintiff's residence applied, we would encourage forum shopping. (See *Reich* v. *Purcell* (1967) 67 Cal.2d 551, 556 [63 Cal.Rptr. 31, 432 P.2d 727].) This is of particular concern in a bad faith insurance action, where the plaintiff may complain of a course of conduct occurring over a period of time, during which plaintiff may at any point change his residence to a more favorable locale without notifying the defendant. Such a holding would also abrogate the interest of a jurisdiction such as Oklahoma in the application of its law to a situation arising out of an insurance policy written in Oklahoma, insuring an Oklahoma resident for an accident that occurred in that state, and where the complained of conduct of the insurer occurred, although its effect was upon a third party residing in California. We are satisfied that Oklahoma has the greater interest in regulating the conduct of the insurer, as well as in protecting the insurer, and through it the insured, against third party bad faith claims.

## DECISION

The order of dismissal is affirmed.

Klein, P. J., concurred.

**LUI, J.,** Dissenting.—I agree with the majority's view that a true conflict exists in the case at bench. The interests of California in regulating insurers and protecting third parties directly conflicts with Oklahoma's interest in

protecting its insurers. However, my analysis of the interests involved compels a conclusion that California law applies.

The California Legislature enacted the Unfair Trade Practices Act, in part, to provide relief against unfair settlement practices of insurance companies operating in this state. (See Ins. Code, § 790 et seq.) Our Supreme Court's decision in *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 884 [153 Cal.Rptr. 842, 592 P.2d 329], specifically holds that a third party claimant may sue an insurer for violations of Insurance Code section 790.03, subdivision (h)(5), relating to unfair settlement practices.

Plaintiff, as the majority notes, became a resident of the State of California shortly after the accident. He alleges in his complaint, which allegations we must accept as true since this is an appeal from the sustaining of a demurrer without leave to amend, that he was in California during the entire time Allstate committed the alleged unfair trade practices against him.

I see no reason why California law should not apply since the impact of a contrary ruling upon California residents would be severe. Even if we assume the acts of Allstate's agents may have physically occurred in the State of Oklahoma, the impact of respondent's acts upon plaintiff are alleged to have occurred in California, and not in Illinois, his residence at the time of the accident, or in Oklahoma, the place of the auto accident. Furthermore, Allstate is a nationwide company, doing substantial business in California.[1]

The majority fears a decision in plaintiff's favor would encourage forum shopping. There is simply no evidence in this record to indicate that plaintiff shopped for California as his forum. In addition, the majority's reasoning would apply Oklahoma law even if plaintiff had been a lifetime resident of California, who returned to California after the Oklahoma accident and was dealt with unfairly by Allstate's agents who refused to transfer the claim file to California in order to avoid the holding in *Royal Globe.* I am simply not persuaded by respondent's plea concerning plaintiff's forum shopping.

Allstate enjoys significant financial benefits of doing business in California. It is a nationwide enterprise that should be held to the higher California standard when its has dealings with California claimants injured by its insureds.

---

[1]The complaint alleges that "one of Allstate's Los Angeles attorneys" revealed the policy limits to plaintiff's attorney about a month before trial. Although the litigation was set for trial in federal court in Oklahoma, Allstate's California counsel was aware of the lawsuit. This circumstance highlights the national nature of Allstate as well as its ties with California, which has an interest in regulating the conduct of insurers doing business in this state.

Because the governmental interests of California would be more impaired than those of Oklahoma (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 164-166 [148 Cal.Rptr. 867, 583 P.2d 721]), I conclude that the trial court erred in applying Oklahoma law. I therefore dissent from the majority's decision affirming the sustaining of Allstate's demurrer to plaintiff's complaint.