892 F.2d 84
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
F. Don STOCKWELL, Plaintiff-Appellant,
v.
The FIRESTONE TIRE AND RUBBER COMPANY, Defendant-Appellee.
 No. 88-5565.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 8, 1989.
Decided Dec. 27, 1989.
 
 Before FLETCHER, PREGERSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 F. Don Stockwell appeals the district court's grant of summary judgment in favor of Firestone Tire & Rubber Co. (Firestone). Firestone sold to First Boston Investments, Inc. (First Boston) its shares in Firestone's Costa Rica subsidiary, retaining as security a proxy to vote the shares in the resulting corporation, Industria Akron de Costa Rica, S.A. (Industria). Stockwell became employed as a Managing Director of Industria, removable only for cause. Stockwell sought substantial money advances and proposed to involve Industria in activities posing potential conflicts of interest. Industria's directors terminated Stockwell. Stockwell obtained relief from Industria pursuant to Costa Rican law, and sued Firestone in Los Angeles County Superior Court, alleging tortious interference with prospective economic advantage and breach of a contract to which he is a third party beneficiary. Firestone removed the action to the federal district court. The district court applied Costa Rican law to the tort claim and Ohio law to the breach of contract claim. The court granted summary judgment for Firestone on both claims.
 
 DISCUSSION
 
 3
 I. Interference with Prospective Economic Advantage
 
 
 4
 In its cause of action for interference with prospective economic advantage, Stockwell's complaint alleges that Firestone "willfully, knowingly, and maliciously exercised control over the Board of Directors of Industria to ... remove plaintiff from the office of Managing Director." The district court granted the defendant's summary judgment motion, holding that the issue was governed by Costa Rican law, and that Costa Rican law did not recognize the tort.
 
 
 5
 A district court's choice of law decision is reviewed de novo. Ledesma v. Jack Stewart Produce, Inc., 816 F.2d 482, 484 (9th Cir.1987).
 
 A. Applicable Law
 
 6
 In diversity actions, the choice of law principles of the forum state control. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1949). California, where Stockwell filed suit, applies a "governmental interest" analysis. Zimmerman v. Allstate Ins. Co., 179 Cal.App.3d 840, 844, 224 Cal.Rptr. 917, 918 (1986); Offshore Rental Co. v. Continental Oil Co., 22 Cal.3d 157, 161, 148 Cal.Rptr. 867, 869, 583 P.2d 721, 723 (1978). The analysis involves three steps: (1) the first is to determine whether the laws of the states involved differ. Offshore, 22 Cal.3d at 162, 148 Cal.Rptr. at 870, 583 P.2d at 724; (2) if they differ, the court determines whether both states have an interest in applying their law. When only one state is interested in applying its law, a "false conflict" results and "clearly the law of the interested state should be applied." Id. at 163, 148 Cal.Rptr. at 870, 583 P.2d at 724 (citing Currie, Selected Essays on The Conflict of Laws, at 189 (1963)); (3) if both states are interested, a "true conflict" situation, California applies the law of the state whose interests would be most impaired if its laws were not applied. Id., 22 Cal.3d at 164-65, 148 Cal.Rptr. at 871-72, 583 P.2d at 726.
 
 1. Differing laws
 
 7
 There is no dispute that the laws of Costa Rica and California differ with regards to the claim of interference with prospective economic advantage. Both parties have submitted declarations of Costa Rican counsel to the effect that Costa Rica does not recognize the tort. Under Fed.R.Civ.P. 44.1, this court may consider counsel's representation of Costa Rican law.[1] The tort, however, is recognized in California. Since the laws of both states differ, we must determine whether only one or both states have an interest in applying their law.
 
 2. Costa Rica's interest
 
 8
 A state's interest in applying its laws generally depends on whether the purposes of its laws are furthered by the laws' application in a particular instance. See Hurtado v. Superior Court, 11 Cal.3d 574, 583, 114 Cal.Rptr. 106, 111, 522 P.2d 666, 671-72 (1974) (where a Mexican decedent was killed by a California resident in a car accident in California, California wrongful death law applied because Mexico had no interest in applying its wrongful death law, since the Mexican law's purpose was to limit the liability of Mexican resident-defendants, not California resident-defendants).
 
 
 9
 Stockwell agrees that by not recognizing the tort of interference with prospective economic advantage, Costa Rica may seek to protect corporations from tort liability. Stockwell argues, however, that this protection does not extend to a nonresident, foreign corporation such as Firestone. We disagree. A state "is concerned with conduct within [its] borders and as to that conduct [it] has the predominant interest." Reich v. Purcell, 67 Cal.2d 551, 556, 63 Cal.Rptr. 31, 34-35, 432 P.2d 727, 730-31 (1967). The conduct that Stockwell alleges was wrongful, i.e., the exercise of willful, knowing, and malicious control over Industria's board of directors, was the exercise of control in Costa Rica over a Costa Rican corporation. Clearly Costa Rica has an interest in regulating and/or protecting foreign companies that exercise control over Costa Rican corporations within its borders.
 
 3. California's interest
 
 10
 If Costa Rica has an interest to apply its law but California does not, a false conflict occurs and Costa Rican law should apply. If both have an interest, the controlling law should be chosen according to a comparative impairment test.
 
 
 11
 Stockwell strongly urges that California is interested in applying its laws to provide him relief because, even though he resides in Costa Rica, he is a domiciliary of California. Stockwell's claim to California domicile is apparently founded on his ownership of a house in El Toro, California. However, California's conflicts law developed to avoid applying laws which "would defeat the interests of the litigant[s] and of the states concerned." Reich, 67 Cal.2d at 554, 63 Cal.Rptr. at 33, 432 P.2d at 729. Given that all the allegedly tortious acts occurred in Costa Rica, and that Stockwell was a Costa Rican resident at all relevant times, California would have little, if any, interest in protecting Stockwell simply because he owns a home in California. On the other hand, application of California law would defeat the interests of Costa Rica and Firestone.
 
 
 12
 Stockwell also maintains that California has an interest in having its law applied because his employment contract was entered into in California. Stockwell is not persuasive. First, California may have an interest in parties honoring contracts entered in California, not because some magic attaches to the place where the contract is signed, but because usually those contracts will be performed in California or at least will affect California residents. Concededly, however, the contract was to be performed in Costa Rica, and Stockwell became a Costa Rican resident before Firestone's alleged interference with his economic benefit occurred. Secondly, we doubt the truth of the assertion that Stockwell's employment agreement was entered into in California. The record shows that Scott Carruthers, the author of the California document, did not sign the agreement, and that Paul Lesko rejected the document once Stockwell arrived in Costa Rica. Lesko then drafted a new agreement, which Stockwell initialed.
 
 
 13
 We conclude Costa Rican law applies to Stockwell's claim for interference with prospective economic advantage. For the reasons previously stated, neither Stockwell's former California residence nor the alleged formation of Stockwell's employment contract in California suggest that California has an interest in applying its laws to Stockwell's claim. If so, a "false conflict" exists, and we must apply the laws of the only interested state, Costa Rica. Offshore, 22 Cal.2d at 162, 148 Cal.Rptr. at 870, 583 P.2d at 724. Even assuming California did have an interest, and a "true conflict" of laws existed, the California conflict of laws rules compel the conclusion that Costa Rican law applies. Costa Rica's interests in protecting and regulating foreign corporations in control of Costa Rican corporations would be comparatively more impaired should they not be applied, than California's tenuous interest in protecting a former resident who suffers an injury abroad.
 
 B. Comity
 
 14
 An alternative ground for applying Costa Rican law is the notion of comity, where "the forum state will generally apply the substantive law of a foreign sovereign to causes of action which arise there ... [out of] respect for the sovereignty of other states or countries." Wong v. Tenneco, Inc., 39 Cal.3d 126, 134, 216 Cal.Rptr. 412, 417, 702 P.2d 570, 575 (1985) (refusing to apply California law to contractual dispute between California residents arising out of Mexican land holdings illegal under Mexican law). An exception to the doctrine arises when the foreign law is contrary to the forum's public policy, "but so offensive ... as to be prejudicial to recognized standards of morality and to the general interests of the citizens." Id., 39 Cal.3d at 138, 216 Cal.Rptr. at 418, 702 P.2d at 576 (citing Knodel v. Knodel, 14 Cal.3d 752, 765, n. 15, 122 Cal.Rptr. 521, 529, 537 P.2d 353, 361 (1975). Stockwell has not shown that Costa Rica's policies are offensive or prejudicial in any respect.
 
 C. Application of Costa Rican Law
 
 15
 We hold that Costa Rican law applies to Stockwell's claim of interference with prospective economic advantage. Since Costa Rican law does not recognize the tort, Stockwell is not entitled to relief under this claim as a matter of law. Summary judgment in favor of Firestone as to this issue was proper.
 
 II. Breach of Contract
 
 16
 The Share Purchase Agreement executed by First Boston and Firestone obligated First Boston to employ Stockwell as a Managing Director in Industria, removable only for cause. The agreement stipulates it shall be construed under Ohio law. Stockwell, asserting third party beneficiary status, claims not to have been discharged for good cause under Ohio law. The district court granted Firestone's summary judgment motion. The review of a grant of summary judgment motion is de novo. Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 764 (9th Cir.1984).
 
 
 17
 The dispute here is whether there was enough cause, as a matter of law, to dismiss Stockwell. The parties agree that in Ohio, just cause exists if the discharged employee's acts were "a default in duty whose natural tendency is to injure [the employer's] business" or "neglect of duty ... dishonesty ... [or] anything which indicates unfitness for the service for which the employee was engaged." Hosking v. Holaender Mfg. Co., 114 Ohio App. 70, 175 N.E.2d 201, 202 (1961).
 
 
 18
 We think the undisputed acts of Stockwell reflect a tendency to injure Industria's interest in such a way as to entitle Firestone to judgment as a matter of law. Those acts are: (1) Stockwell's request for $50,000 during his first few days of working for Industria, approximately $15,000 of which were to be used for his personal moving expenses even though Industria had separately agreed to reimburse one half of his moving expenses; (2) Stockwell's requests to hire family relatives and acquaintances; and (3) Stockwell's insistence that Industria sponsor a bowling tournament proposed by his brother-in-law.
 
 
 19
 Stockwell argues that his conduct does not establish cause to dismiss him because he never actually obtained the $50,000 advance, or hired the family relatives and acquaintances. The Ohio rule, however, is not that cause is established only after the employee injures the employer's business. A tendency to injure the business is sufficient. See Hosking, 114 Ohio App. 70, 175 N.E.2d 201, 202. Given that Stockwell's conduct posed potential conflicts of interest, we think that requirement is satisfied here.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Rule 44.1 provides in part: "The court, in determining foreign law, may consider any relevant material or source, including testimony...."